**\*E-FILED 10/16/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BROOKE MCLAUGHLIN,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

NO. C 04-00960 RS

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Brooke McLaughlin suffered a horrific attack at the hands of two United States marines. The marines were convicted of attempted murder and are now serving life sentences. In this action, McLaughlin seeks to hold the government liable in negligence for the actions the Marine Corps took or failed to take with respect to the two marines prior to the attack on plaintiff.

The motion was heard on September 6, 2006. After full consideration of the parties' briefs, the record herein, the arguments of counsel, and the relevant authorities, the United States's motion for summary judgment will be granted.

## II. BACKGROUND

One evening in November of 2000, McLaughlin was walking along Pacific Grove Recreation Trail in Pacific Grove, California. She was attacked at random by two United States Marines on liberty, Jessie Carson and Jason Blad. Blad held McLaughlin, while Carson stabbed her approximately twelve times in the torso, abdomen, and back, and made two slashing cuts to her

1

1 throat. Carson and Blad were eventually arrested, tried, convicted, and sentenced to life in prison.

2 McLaughlin contends that Carson and Blad's dangerous propensities were or should have
3 been known to their fellow marines, and should have been reported up the chain of command.
4 McLaughlin relies on all of the following facts: (1) Carson gathered and read books on serial killers,
5 that he stored in his barracks.  He told a sargent who inquired about them that he intended to become
6 a criminologist; (2) Carson kept a journal describing his fascination with serial killing.  Blad and
7 other soldiers knew the journal existed; (3) Carson and Blad "accumulated a collection of knives and
8 other weaponry" that they kept in their barracks.  One of Carson's knives, the one used in the attack,
9 was against regulations because of its blade length.  Blad and other marines knew the knife existed.
10 Blad also kept a sword, which the room inspector ignored and even complimented;  (4) Carson
11 shared his "depraved and violent fantasies" with other soldiers.  One sargent testified that Carson
12 would come to his room to discuss killing; (5) Carson participated in several "black opps" with a
13 small group of fellow marines. In these events, the marines would sneak out of barracks, and pretend
14 they were on military missions, sometimes in civilian neighborhoods; (6) Blad had a history of
15 suicide attempts before joining the marines.  Blad sought out therapy when in the marines, and
16 disclosed his prior suicide attempts.  The therapist gave him only one and a half hours of therapy,
17 some medications "and sent him on his way."

18 McLaughlin contends that these alleged facts, taken together or separately, are sufficient to
19 give rise to a legal duty owed by the United States towards her, and that there is at least a material
20 factual dispute as to whether the government's conduct was a proximate cause of the terrible attack
21 perpetrated upon her.

22
23                                      III.  LEGAL STANDARDS
24 Summary judgment is proper "if the pleadings and admissions on file, together with the
25 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
26 party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary
27 judgment is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*,
28 477 U.S. 317, 323-324 (1986).

2

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 111 S.Ct. 2419, 2434-35 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986); *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service*, 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

Here, although there are numerous *details* where the facts are in dispute or the record is not

3

entirely clear, the focus of the controversy between the parties is whether there is a cognizable legal claim that arises from the basic facts. As such, the question is not whether there is a material factual dispute, but whether on the effectively undisputed facts, the United States "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

### A.  The Limitations on Potential Liability

This action, against the United States government, is brought under the Federal Tort Claims Act ("FTCA"), which waives sovereign immunity in certain circumstances and under certain conditions. In relevant part, the FTCA provides that:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The "assault and battery exception" to the FTCA, however, provides that the waiver of sovereign immunity does *not* apply to "[a]ny claim arising out of assault [or] battery." 28 U.S.C. § 2680 (h). In addition, it is settled law, and McLaughlin does not argue to the contrary, that the government is not *vicariously* liable (through the doctrine of *respondeat superior* or otherwise) "for the intentional torts of its employees." See *Sheridan v. United States*, 487 U.S. 392, 395-397 (1988).

The "assault and battery exception" has been the subject of significant controversy in the courts. In *United States v. Shearer*, 473 U.S. 52 (1985), a plurality of the United States Supreme Court concluded that "the arising out of" language in the exception would bar *any* lawsuit, such as this one, where the plaintiff's injuries arose as a direct result of an assault or battery committed by a government employee. In *Shearer,* an off duty serviceman attacked and killed another solider. The plurality opinion rejected an attempt by the victim's mother to hold the government liable in negligence for having failed "to exert a reasonably sufficient control over" a soldier that the Army "knew . . . was dangerous." 473 U.S. at 54. The plurality opined,

4

> it is clear that [plaintiff's] claim arises out of the battery committed by [the attacker]. No semantical recasting of events can alter the fact that the battery was the immediate cause of [the victim's] death and, consequently, the basis of [plaintiff's] claim.

473 U.S. at 54-55.

Were the plurality opinion of *Shearer* the law, no meaningful distinction between it and this case could be drawn and McLaughlin's claims would clearly be barred. The opinion of the *Shearer* court, however, in which a majority of the justices joined, rejected liability in that case based on the "*Feres* doctrine," which limits the claims that may arise from injuries to a member of the armed forces in the course of his or her military service. See 473 U.S. at 57-59. Here, because McLaughlin was *not* a member of the military, the "*Feres* doctrine" is inapplicable and the majority opinion of *Shearer* is not controlling.

Although some circuit courts of appeals subsequently adopted the *Shearer* plurality's opinion as law, the Ninth Circuit has not done so. In this circuit, the law is that the "assault and battery exception" does *not* preclude a claim against the government where government's *own negligence* was a proximate cause of the event in which the plaintiff sustained injury. See *Bennet v. United States*, 803 F.2d 1502 (9th Cir. 1986); *Morrill v. United States*, 821 F.2d 1426 (9th Cir. 1987); *Kearney v. United States*, 815 F.2d 535 (9th Cir. 1987); *Senger v. United States*, 103 F.3d 1437 (9th Cir. 1996).[1] McLaughlin understands these rules, and strenuously argues that she is not attempting to hold the government vicariously liable for the attack perpetrated by Carson and Blad, but for the failure of the Marine Corps to act in a way that would have prevented the attack.

Although a claim based on the government's own negligence is theoretically possible in this Circuit, the viability of such a claim ultimately turns on California, as opposed to federal, law. The FTCA permits liability "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." See also *Sheridan*, *supra*, 487 U.S. at 401-402 (holding claim against government leading to assault by soldier

---

[1] Supreme Court authority subsequent to *Shearer* has also declined to follow the plurality opinion. *See Sheridan*, *supra*, 487 U.S. at 403 (permitting liability against Government for its own negligence, notwithstanding that underlying attack on plaintiff was an assault an battery") and *id.* (White, J., concurring) (member of the *Shearer* plurality disavowing prior views to the extent inconsistent).

5

potentially viable based on assumption that state law would permit negligence claim under the circumstances). Accordingly, the issue before this Court is whether, under California law, the facts of this case support a claim for negligence against the government.

### B. California Negligence Law

Under California tort law, "[g]enerally, one has 'no duty to act to protect others from the conduct of third parties.'" *Margaret W. v. Kelley R.,* 139 Cal.App.4th 141, 150 (2006) (quoting *Delgado v. Trax Bar & Grill*, 36 Cal.4th 224, 235 (2005)). "That reflects the law's reluctance to impose liability for nonfeasance." *Id.*

Accordingly, "A person who has not created a peril is ordinarily not liable in tort merely for failure to take affirmative action to assist or protect another, no matter how great the danger in which the other is placed, or how easily he or she could be rescued, unless there is some relationship between them that gives rise to a duty to act." *Id.* (quoting 6 Witkin, *Summary of Cal. Law,* Torts, § 1038 at pp. 332-333 (10th ed.2005)). As the *Margaret* court further explained:

> If there is no duty, there can be no liability, no matter how easily one may have been able to prevent injury to another. And, while questions concerning whether a duty has been breached and whether that breach caused a plaintiff's injury may be questions of fact for a jury, the existence of the duty in the first place is a question of law for the court. [Citation] The existence and scope of any duty, in turn, depends on the foreseeability of the harm, which, in that context, is also a legal issue for the court.

139 Cal.App.4th at 150.

Here, there is no dispute that the "conduct of third parties"–Carson and Blad–was the immediate cause of McLaughlin's injuries. Under California law, a duty to protect against the conduct of third parties must be tethered to some kind of "special relationship." For example, in *Margaret*, the plaintiff was a minor who had been invited into the home of the defendant, and subsequently suffered an attack at the hands of other minors. The *Margaret* court had no difficulty in concluding that "a host parent assumes a special relationship with children invited into her home"

1  and that a duty to safeguard the plaintiff thereby existed. 139 Cal.App.4th at 152.[2]

2  In contrast, it is undisputed that McLaughlin had no relationship of any kind to the Marine Corps–the attack did not occur on military property, and Blad and Carson did not come into contact with McLaughlin in the course or scope of conducting any military activity. The cases on which McLaughlin relies mostly involved circumstances where there was some nexus between the plaintiff and the government; a connection that is wholly absent here. In *Bennet*, for example, plaintiffs were parents whose children had been molested by a teacher at a government-run school. 803 F.2d at 1503. Although the molestation occurred off school property, the children had come into contact with the teacher by virtue of their enrolment at the government school *Id.*[3] In *Morrill*, the plaintiff was a "go-go dancer" hired by the military to perform at an on-base club, where she was raped by a serviceman in the club's bathroom. 821 F.2d at 1427. In *Senger*, the plaintiff was a "business invitee," attacked on or near government property by a government employee during the course of performing a service at the government's request. 103 F.3d at 1442. In each of these situations, California law recognizes at least some potential duty on the part of the employer to protect third persons from acts of its employees.

The only Ninth Circuit case finding potential liability *without* such a clear connection between the plaintiff and the government is *Kearney.* There, a serviceman who was "a prisoner in custody" at an army base managed to leave the base, and bring a woman back to the base before raping and killing her. 815 F.2d at 535-536. The issue in *Kearney*, however, was only whether the "assault and battery exception" wholly-barred the claim, given the then-recent plurality opinion of *Shearer*. *See Kearney*, 815 F.2d at 536. Although the *Kearney* court described the conduct of the military that allowed an in-custody prisoner to escape as "negligent," it did not consider or decide

---

[2] Ultimately, however, the *Margaret* court held that the particular attack on plaintiff, which occurred after the plaintiff left the defendant's house, was so unforeseeable that the defendant had no duty to prevent it. 139 Cal.App.4th at 161.

[3] Furthermore, the Ninth Circuit specifically cautioned that: "On remand, the trial court should determine to what extent the sexual molestation took place when Hester was off duty and to what extent the particular circumstances of the employment relationship created the opportunity for these crimes." 803 F.2d at 1505. The clear implication was that the Ninth Circuit left open the question of whether there was a sufficient relationship to impose negligence liability under California law.

7

1  whether such "negligence" would be actionable under California law. Rather, the court simply
2  rejected the argument that the *Kearney* plurality opinion was controlling, and remanded the action
3  for further proceedings. 815 F.2d at 538.

4  Similarly, the one Supreme Court case that involved a plaintiff with no direct relationship to
5  the government, expressly *assumed*, based on the parties' concessions, that state law would
6  recognize a negligence claim on the facts presented. See *Sheridan*, *supra*, 487 U.S. at 401 ("The
7  District Court and the Court of Appeals both assumed that petitioners' version of the facts would
8  support recovery under Maryland law on a negligence theory if the naval hospital had been owned
9  and operated by a private person.") Significantly, after remand, the district court and the court of
10 appeals ultimately found that the facts did *not* support imposing a duty on the government in that
11 instance. *Sheridan v. United States*, 969 F.2d 72, 74 (4th Cir. 1992) ("The United States is not liable
12 for negligence under Maryland law because, given the circumstances presented on this appeal, it
13 owed no duty to plaintiffs to protect them from the intentional criminal acts of [the serviceman].").[4]

14 There is no doubt that McLaughlin suffered a despicable and depraved attack. As the
15 *Margaret* court observed, however, "[t]he issue is not whether plaintiff was the victim of a terrible
16 wrong nor whether she suffered devastating injury as a result of that wrong, but instead who is liable
17 under our tort law for her injuries." McLaughlin has identified numerous instances where Blad and
18 Carson (together with other Marines, who did *not* ultimately attack her) violated various rules and
19 regulations imposed by the military. She has also identified various behavior of Blad and Carson
20 that she contends should have led others to recognize that they had dangerous propensities. Under
21 California law, however, that simply is not enough to give rise to a legal duty on the part of the
22 government to have somehow protected McLaughlin from this attack.[5]

---

[4] The Fourth Circuit's opinion after remand in *Sheridan* is not directly applicable in that the law of that circuit, unlike the Ninth, is that negligent supervision and hiring claims arising from an assault or battery remain barred by the "assault and battery exception." Compare *Sheridan*, 969 F.2d at 75 with *Bennet*, 803 F.2d at 1504. Nevertheless, even though claims based on negligent hiring and supervision may be viable in this circuit in the abstract, California law still requires some relationship that is not present on these facts.

[5] The United States also brought a motion to exclude McLaughlin's expert witness from offering evidence in opposition to this motion and at trial, arguing both that the expert's opinion was not properly and timely disclosed, and that the opinions should be excluded under *Daubert*. As discussed at the hearing, this motion presents questions of law as to which the expert's proffered

8

## V. CONCLUSION

The motion of the United States for summary judgment is GRANTED, for the reasons set forth above.

IT IS SO ORDERED.

Dated: October 16, 2006

/s/ Richard Seeborg
RICHARD SEEBORG
United States Magistrate Judge

---

opinions have little bearing, and the Court has not relied on the expert's view as to what the law is or should be. In light of the outcome of this summary judgment motion, the request to exclude the expert from testifying at trial is moot.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
C 04-00960 RS

9

1 **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

2 Robert E. Cartwright , Jr    vicki@cartwrightlaw.com, biz@cartwrightlaw.com

3 Claire T. Cormier    claire.cormier@usdoj.gov

5 Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

7 **Dated: 10/16/06**                                                                                       **Chambers of Judge Richard Seeborg**

**By:**           **/s/ BAK**

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
C 04-00960 RS